UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
\*
UNITED STATES OF AMERICA   \*
\*
v.   \*   CRIMINAL NO. 05-30052-MAP
\*
PHILLIP DIPPOLT   \*
\*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## DEFENDANT'S SENTENCING MEMORANDUM

*Introduction*

Since *United States v. Booker*, 534 U.S. 220 (2005), reasonableness has returned to the forefront as the touchstone for a proper sentence for violations of federal law. *United States v. Zapete-Garcia*, 447 F.3d 57 (1st Cir. 2006), *United States v. Alli*, 444 F.3d 34 (1st Cir. 2006). The United States Sentencing Guidelines remain an important factor in sentencing and the First Circuit Court of Appeals has indicated that a District Judge should begin by calculating the applicable guidelines and then determining whether there are other factors which make a sentence outside of the guideline range appropriate. *United States v. Jiminez-Beltre*, 440 F.3d 514, 518-19 (1st Cir. 2006) (*en banc*). Most importantly, it is now clear that a sentencing court must consider not only the guidelines, but the other factors set forth in 18 U.S.C. 3553 (a). *Zapete-Garcia*, at 59 n.4, *Alli,* at 40 n.10. These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence; to

protect the public; and to provide the defendant with needed educational or vocational training or medical care;

    (3) the kinds of sentences available;

    (4) the kinds of sentence and sentencing range established by the Guidelines;

    (5) any pertinent policy statement;

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

*Id., citing* 18 U.S.C. 3553 (a).

The defendant contends that when all of the above factors are taken into consideration along with the section 3553 (a) language requiring a "sentence sufficient, but not greater than necessary, to comply with the purposes" of the statute,[1] a sentence of probation with home confinement is appropriate.

### *The Sentencing Guidelines*

The defendant has previously stated his objections to the presentence report and will not repeat them herein. If the court accepts the probation officer's report, the guidelines sentencing range is 70-87 months. As will be discussed below, were the court to sentence at this range, there is a very strong likelihood that the defendant would die in prison. The guidelines also call for a fine of between $12,500.00 and $125,000.00. For reasons addressed below, the defendant will request that no fine be imposed.

### *Grounds for Departure from the Guidelines*

---

[1] This language is often referred to as the "rule of parsimony" in the recent caselaw.

The United States Sentencing Guidelines contain two policy statements that are directly relevant to the court's consideration of whether a departure from the guideline range is warranted as well as to what sentence is sufficient in this case.

*Age*

USSG 5H1.1 pertains to age and states in pertinent part as follows: "Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient and less costly than incarceration."

The defendant is 63 years old and has no prior record. While this age is no longer considered elderly, if it ever was, Mr. Dippolt is functionally much older due to his health problems which have been documented in the presentence report and which will be discussed further below. It is a factor to consider in cases such as this, where if the court imposed a sentence within the guideline range, there would be a very real possibility that the defendant would die before completing his sentence. This is excessive under any definition, especially with the knowledge that older offenders are far less likely to recidivate. *See United States v. Thomas*, 360 F. Supp. 2d 238 (D. Mass. 2005). In fact, the United States Sentencing Commission Report released in May, 2004 indicated that for offenders over the age of 50, the rate of recidivism was only 9.5% or about one-quarter of that of people under the age of 21. *See U.S.S.C.*, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12, http:\\www.ussc.gov/publicat/Recidivism-General.pdf., cited in *United States v. Nellum*, 2005 WL 300073 (N.D. Ind.) Simon, J., (unreported decision).

3

The Government has also acknowledged that older offenders, whether infirm or not, suffer greater punishment in prison because they are at risk of being preyed upon by younger inmates and because they lack social support. *See Correctional Health Care, Addressing the Needs of the Elderly, Chronically Ill, and Terminally Ill Inmates, U.S. Department of Justice, National Institute of Corrections (2004 ed.), http:\\ www.ncic.org/Library/018735*. This is surely the case here. Mr. Dippolt's crime of conviction combined with his physical frailty would make him a candidate for exploitation. He would essentially do his time as a loner, as it is unlikely that he would develop any social support within the institution given his crimes and health issues.

Mr. Dippolt would also not have the luxury of extensive outside support. He has no children and has very little family other than his wife. What few blood relatives he has have largely abandoned him due to his offense of conviction. His only outside social support would come from his wife, an enormously magnanimous person, who has stayed with the defendant despite his offense and deteriorating health and would be further burdened by having to make time to visit him, in addition to supporting herself.[2]

Finally, the First Circuit has acknowledged that age is now an appropriate consideration in those cases where the guidelines sentence would in effect be a life sentence. *See United States v. Lewis*, 406 F.3d 11, 21-22 (1st Cir. 2005).

*The Defendant's Health*

USSG section 5H1.4 states in pertinent part that, ". . . an extraordinary physical impairment may be a reason to depart downward, e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."

---

[2] Although FPC Devens apparently contains a level 4 medical center, there is of course no guarantee that Mr. Dippolt would be designated there, especially if it were determined that his medical needs might be better met at another facility. *See The Champion, March 2005 issue, at p. 43*

4

The presentence report, with its attached medical reports, irrefutably document that the defendant is a very sick man indeed. His wife, his psychotherapist and counsel all feel that his physical well-being has declined significantly during the time in which this case has been pending. His medical needs are of a kind and degree that clearly indicate that home detention would be more efficient and less costly than imprisonment.

Several aspects to the defendant's health merit comment. First, his cardiovascular health is precarious at best. Many federal inmates have undoubtedly suffered heart attacks and even had bypass surgery, but Mr. Dippolt's disease is advanced well beyond just the risk of myocardial infarction. He has already had five myocardial infarctions and has had seven stents surgically implanted. Despite this, he still suffers from a "markedly impaired" left ventricular function and a significantly depressed ejection fraction which, along with his other medical problems give him a poor prognosis which will be "considerably worsened if he was confined to a prison."

In addition to his heart attacks and coronary bypass surgery, Mr. Dippolt, as Dr. Schweiger's report indicates, also has a surgically implanted defibrillator, due to several episodes of syncope. Of particular note is that his implanted defibrillator has fired in February and November of 2005, and that he was hospitalized for three days in August of 2005 due to an ischemic attack.

As part of his cardiac care, Mr. Dippolt goes to a cardiac rehabilitation facility three times per week to exercise in an effort improve his cardiovascular function. A gym at a federal prison will not be an adequate substitute. Due to the severity of his cardiovascular condition, Mr. Dippolt is monitored by nurses while he exercises. It is

5

extremely unlikely that Mr. Dippolt can get the level of cardiac care within the Bureau of Prisons that he needs simply to survive.

Secondly, Mr. Dippolt suffers from severe diabetes mellitus. In recent years, he has developed a diabetic neuropathy which has progressively worsened. As Dr. Bajwa's report notes, he now has bilateral foot drop and must wear braces on both legs. More significantly, this condition has progressed to the point that he frequently falls down and hurts himself. This has happened on three occasions during the time that this case has been pending; in January, April and May of 2005. Each fall resulted in a fracture or laceration. Since these falls, if Mr. Dippolt has to walk farther than a very short distance, he either uses a wheelchair or a home scooter.

Mr. Dippolt's diabetic neuropathy also affects his upper extremities. The condition in his hands has progressed to the point that he has a difficult time with sensation in his fingers and cannot grasp or pick up small objects.

Finally, Mr. Dippolt takes a fistful of drugs every day[3], which must be regularly monitored. He has obviously benefited enormously by the fact that his wife is a registered nurse. It is unclear whether all of his medications would be available to him in a federal prison.

The First Circuit has had occasion to comment on the types of medical conditions that are appropriate for a court to base a decision to depart downward. "A court may find. . . extraordinary impairment when imprisonment would threaten or shorten a defendant's life or when the Bureau of Prisons would be unable to meet the defendant's medical needs." *United States v. Martin*, 363 F.3d 25, 49 (1st Cir. 2004), *citing United*

---

[3] Mr. Dippolt's medications are listed as an attachment to Dr. Bajwa's report which has been incorporated into the presentence report.

6

*States v. LeBlanc*, 24 F.3d 340, 348-349 (1st Cir. 1999).  The sentencing judge should not impose a sentence of incarceration where there is strong reason to believe that the period of incarceration will significantly shorten the defendant's life span.  *Martin* at 50, *citing LeBlanc* at 348-349 and *United States v. Long*, 977 F.2d 1264, 1278 (8th Cir. 1992).  In post-*Booker* sentencings it is entirely appropriate for a judge to consider the fact that this defendant's health is more impaired than the average defendant's and that incarceration will be both a greater burden on the federal system and on the defendant.  *United States v. Simon,* 361 F. Supp. 2d 35 (E.D.N.Y. 2005).

### *18 U.S.C. section 3553(a) factors*

#### <u>*Nature and Circumstances of the Offense*</u>

The defendant committed his offense, not as a part of an elaborate scheme to exploit children, or even due to a life-long obsession with child pornography.  He committed his offense as a sick, older man, living in a fantasy world reached through a keyboard in his basement.  While this does not excuse his behavior, it does differentiate him from more dangerous offenders.  There is no evidence that he ever did anything more than chat about, collect and trade these images.  There was no profit motive nor any motive other than an a misguided attempt to stimulate himself, which while perhaps mentally successful was physically unsuccessful.

#### <u>*History and Characteristics of the Defendant*</u>

The defendant is 63 years old and has no record of convictions.  He has been married to his wife, Christine, for thirty–five years.  He served his country honorably as a member of the United States Air Force and experienced combat in the Vietnam conflict.  His work history includes many years of employment in the helping professions, as an

EMT and as an emergency room attendant at the VA Hospital and at Cooley-Dickinson Hospital.  Until this incident, he has been a productive and law abiding member of the Northampton community for most of his entire life.

> *The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment; to Afford Adequate Deterrence; to Protect the Public; and to Provide the Defendant with Needed Educational or Vocational Training or Medical Care*

Two aspects of this 3553 (a) factor deserve comment.  First, protection of the public is arguably the foremost consideration in any criminal sentence.  Here, there is no real fear that the public will be endangered by the sentence that the defendant seeks.  The defendant's frailty makes it virtually impossible for him to offend in any way other than by continuing to view child pornography.  It is obvious that there are measures that can be taken, short of incarceration, that can prevent him from engaging in this sort of behavior.  A probationary condition that the defendant not have access to a computer is entirely appropriate given the nature of the offense.  A waiver of any rights that he might retain to object to a search by his probation officer for obscene materials would also be in order.  Counsel notes however that the defendant is fully aware, as the court should be, that his wife will be diligent in making sure that he is not engaging in this behavior and that she would leave him in a heartbeat were he to make the same mistake again.

Second, this factor directs the court once again to consider any medical care that the defendant may need.  The language of this factor combined with USSG 5H1.4 makes clear that the defendant's medical needs should be met in the most efficient manner.  *See United States v. Ryder,* 414 F.3d 908, 920 (8th Cir. 2005).  Clearly, the most efficient manner to deal with the defendant's multiple health problems is by a sentence of home confinement.

*Kinds of Sentences Available and any Pertinent Policy Statements*

The language of the policy statements on age and physical impairment will not be repeated here. Clearly however, the court should find support in a sentence of home confinement by the fact that the policy statements specifically contemplate such a sentence for persons in Mr. Dippolt's situation.

*The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct*

The key word in this factor is "unwarranted." There is no question that others who have been found guilty of this offense will serve time in a federal prison. However, the defendant should not be compared with all other violators of the child pornography laws, but with those who suffer from the same physical impediments as him. In that case, a sentence of home confinement is not disparate and does not run afoul of any conscientious court's efforts to treat similar offenders similarly.

***The Defendant's Sentencing Recommendation***

The defendant should be sentenced to a period of probation of five years. Conditions of probation should include:

1. Home confinement for the first year of the probationary period, or for however long the court deems just and appropriate;

2. that the defendant not have access to a computer;

3. that the defendant continue to receive mental health counseling;

4. that the defendant not own or possess pornographic material;

The defendant suggests that his home confinement be modified so as to allow him to attend all doctor's appointments, therapist appointments and cardiac rehabilitation sessions only. The defendant requests that he be allowed to drive his wife to work and to

9

pick her up from work for as long as he is physically able, so that he will have transportation to get to said appointments, as this is a one car family. Counsel requests that the Court be sensitive to imposing any conditions that would adversely affect Mrs. Dippolt, as she has already suffered a great deal and will inevitably suffer further by the need for her to take care of the defendant's non-medical needs, such as food shopping and the like, which the defendant has previously done. For this reason, counsel respectfully requests that any fines be waived as ultimately it will be Mrs. Dippolt who will in effect pay them.

THE DEFENDANT

By: /s/ David P. Hoose
DAVID P. HOOSE,  BBO#239400
KATZ, SASSON, HOOSE & TURNBULL
1145 Main Street, Suite 304
Springfield, MA  01103
(413) 732-1939

(413) 746-5767 [fax]